UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

NORTH SHORE MARINE TERMINAL
AND LOGISTICS, INC.,

        Plaintiff,                Case No.

    v.

LOCKHEED MARTIN CORPORATION,

        Defendant.

## COMPLAINT

NOW COMES the plaintiff, NORTH SHORE MARINE TERMINAL AND LOGISTICS, INC. ("North Shore"), and complains of defendant as follows:

1. This is an action for damage to the underwater seabed and dock facilities owned by North Shore during sea trials of a littoral combat vessel conducted pursuant to plaintiff's agreement with Lockheed Martin Corporation ("Lockheed").

2. This court has admiralty jurisdiction over this matter pursuant to 28 U.S.C. § 1333, as the claims involve the operation of a vessel manufactured for the United States Department of the Navy on federally navigable waterways of the United States. In addition, all actions against the United States must be brought in federal courts pursuant to 28 U.S.C. § 1346.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, in or along Lake Michigan in Escanaba, Michigan.

4. Plaintiff is a Michigan corporation that owns and operates a marine dock and terminal location along Lake Michigan in Escanaba, Michigan.

5. Lockheed is a Maryland corporation with its principal place of business located in Bethesda, Maryland. Lockheed is a defense contractor for the United States government.

6. Lockheed sought bids for use of marine facilities to conduct sea trials related to littoral combat ships it had manufactured for the United States Department of the Navy.

7. On or about March 18, 2021, North Shore submitted its proposal to Lockheed for berthing and support services for littoral combat ships being built for the United States Department of the Navy.

8. In response to the proposal, Lockheed requested that North Shore submit a "Firm Fixed Price quotation" for support services.

9. Lockheed accepted North Shore's offer to provide berthing and support services related to sea trails of littoral combat ships.

10. Lockheed utilized the facilities and services of North Shore in Escanaba, Michigan, for docking and securing of the USS Minneapolis-Saint Paul (LCS 21), a littoral combat ship (the "Vessel").

11. Prior to May 4, 2022, North Shore and Lockheed agreed that gas turbine engines of the Vessel should not be used when departing from and docking at the North Shore dock, but only the diesel engines of the Vessel should be used to avoid damage to the North Shore dock facilities.

12. Prior to each sea trial, North Shore communicated with Lockheed and the master of the Vessel that gas turbine engines should not be used when departing from and docking at the North Shore dock, but only the diesel engines of the Vessel should be used to avoid damage to the North Shore dock facilities.

13. On May 4-6, 2022, while departing from and berthing at the North Shore dock, the Vessel's master employed the Vessel's gas turbine engines.

14. Use of the Vessel's gas turbine engines caused extensive displacement of bottom materials on the lakebed adjacent to the seawall of the North Shore dock, causing damage to the seabed, seawall, and dock.

15. On May 6, 2022, while the Vessel was attempting to berth at the North Shore dock, the Vessel backed into the seawall three times, causing damage to the dock and seawall, as well as the Vessel.

16. North Shore provided Lockheed (John Verrillo) and the United States Department of the Navy (LCDR J. Martin Bunt) with notice of the claim and damage in correspondence dated August 24, 2022, a true and accurate copy of which is submitted herewith as Exhibit A and made a part hereof.

**COUNT I**
**Negligence - Lockheed**

17. Plaintiff adopts and incorporates by reference paragraphs 1-16 as if fully restated herein.

18. Lockheed had a duty to ensure that the master of the Vessel did not use gas turbine engines during berthing maneuvers to avoid damage to the North Shore dock and seawall.

19. Lockheed breached its duty to North Shore when the master of the Vessel repeatedly used gas turbine engine power during berthing maneuvers at the North Shore dock and seawall.

20. The master of the Vessel's use of gas turbine engine power during berthing maneuvers at the North Shore dock caused damage to the North Shore seabed, seawall and dock, which will require dredging and extensive repairs to the structure.

21. As a result of the foregoing, North Shore has been damaged, as best as can be estimated, in the amount of $2,550,000.00, plus interest, costs and expenses.

WHEREFORE, plaintiff prays that judgment be entered in its favor and against Lockheed in the estimated amount of $2,550,000.00, plus interest, costs and expenses, and for such other and further relief as is just and appropriate.

## COUNT II
### Breach of contract – Lockheed

22. Plaintiff adopts and incorporates by reference paragraphs 1-16 as if fully restated herein.

23. Lockheed provided a Request for Proposal to North Shore for berthing and support services for littoral combat ships being built for the United States Department of the Navy with the following particulars:

> RFP No.: LM-WJB-5-17-2021_Rev1
> RFP Date: 24 May 2021
> NAICS: 336611
> Government Prime Contact No.: N00024-11-C-2300

24. North Shore agreed to provide berthing and support services for littoral combat ships being built for the United States Department of the Navy to Lockheed therefore.

25. As part of the agreement, North Shore advised Lockheed that gas turbine engines could not be used during berthing maneuvers to avoid damage to the North Shore dock and seawall.

26. Lockheed agreed that gas turbine engines would not be used during berthing maneuvers to avoid damage to the North Shore dock and seawall.

27. On May 4-6, 2022, the master of the Vessel used gas turbine engine power during berthing maneuvers at the North Shore dock, which caused extensive damage to the North Shore seabed, seawall and dock, which will require dredging and extensive repairs to the structure.

28. As a result of the foregoing, North Shore has been damaged, as best as can be estimated, in the amount of $2,550,000.00, plus interest, costs and expenses.

29. WHEREFORE, plaintiff prays that judgment be entered in its favor and against Lockheed in the estimated amount of $2,550,000.00, plus interest, costs and expenses, and for such other and further relief as is just and appropriate.

## COUNT III
### Public Vessels Act (46 U.S.C. § 31101, et seq.) – United States

30. Plaintiff adopts and incorporates by reference paragraphs 1-16 as if fully restated herein.

31. At all material times, the Public Vessels Act was in effect, which allows for a civil action against the United States for "damages caused by a public vessel of the United States…." 46 U.S.C. § 31102(a)(1).

32. At all material times, the master of the Vessel was an officer or otherwise employed by the United States Department of the Navy.

33. At all material times, the Vessel was a public vessel of the United States Department of the Navy.

34. North Shore advised the master of the Vessel that gas turbine engines could not be used during berthing maneuvers to avoid damage to the North Shore facilities in pre-trip discussions before each voyage.

35. The master of the Vessel had a duty to avoid using gas turbine engines during berthing maneuvers at the North Shore facilities.

36. In breach of said duty, on May 4-6, 2022, the master of the Vessel used gas turbine engine power during berthing maneuvers at the North Shore dock, which caused extensive damage to the North Shore seabed near the North Shore dock.

37. The damage caused by said negligence will require dredging and similar underwater repairs to maintain the channel for safe vessel passage to and from the North Shore dock facility.

38. North Shore has suffered damages related to required dredging and underwater repairs, as best as can be estimated, in an amount of at least $600,000.00.

WHEREFORE, plaintiff prays that judgment be entered in its favor and against the United States Department of the Navy in the estimated amount of at least $600,000.00, plus costs and expenses, and for such other and further relief as is just and appropriate.

## COUNT IV
### Admiralty Extension Act – United States

39. Plaintiff adopts and incorporates by reference paragraphs 1-16 as if fully restated herein.

40. At all material times, the Admiralty Extension Act provides for civil actions against the United States for "for injury or damage done or consummated on land by a vessel on navigable waters…." 46 U.S.C. § 30101(c)(1).

41. At all material times, the Public Vessels Act was in effect, which allows for a civil action against the United States for "damages caused by a public vessel of the United States…." 46 U.S.C. § 31102(a)(1).

42. At all material times, the master of the Vessel was an officer or otherwise employed by the United States Department of the Navy.

43. At all material times, the Vessel was a public vessel of the United States Department of the Navy.

44. North Shore advised the master of the Vessel that gas turbine engines could not be used during berthing maneuvers to avoid damage to the North Shore facilities in pre-trip discussions before each voyage.

45. The master of the Vessel had a duty to avoid using gas turbine engines during berthing maneuvers at the North Shore facilities.

46. In breach of said duty, on May 4-6, 2022, the master of the Vessel used gas turbine engine power during berthing maneuvers at the North Shore dock, which caused extensive damage to the North Shore seabed near the North Shore dock, along with the dock facilities.

47. In further breach of his duties as master of the Vessel, the Vessel was backed into the North Shore dock three times, causing additional damage to the dock and seawall.

48. On May 6, 2022, North Shore advised Lockheed and the United States Department of the Navy of the significant impact on the docking facility caused by use of the gas turbine engines of the Vessel and the Vessel's allisions with the dock.

49. The United States Department of the Navy approved underwater inspections of the seawall and lake bottom, which were conducted on May 7, 2022, and the results of which were shared with the United States Department of the Navy. *See Exhibit A*.

50. On May 10, 2022, representatives from North Shore, Lockheed, and the United States Department of the Navy met at North Shore's facility to discuss the docking procedures and damages.

51. The United States Department of the Navy received written notice of the incidents and related claim on August 24, 2022, via correspondence to LCDR J. Martin Bunt, among other Navy personnel. *Exhibit A*.

52. As a result of the foregoing, North Shore has been damaged, as best as can be estimated, in the amount of $2,550,000.00, plus interest, costs and expenses.

WHEREFORE, plaintiff prays that judgment be entered in its favor and against the United States Department of the Navy in the estimated amount of $2,550,000.00, plus costs and expenses, and for such other and further relief as is just and appropriate.

        Respectfully submitted,

        NORTH SHORE MARINE TERMINAL
        AND LOGISTICS, INC., plaintiff,

        s/ Timothy S. McGovern
        Its attorney

Timothy S. McGovern (IL 6275492)
**Zeiler Floyd Zadkovich (US) LLP**
53 West Jackson – Suite 835
Chicago, Illinois 60604
(312) 579-8380
tmcgovern@zeilerfloydzad.com